All right, we have Mr. Bruckerhoff for the appellant, I see you reserved three minutes for rebuttal. You can begin whenever you're ready. May it please the court. My name is Josh Bruckerhoff and I represent the appellant, the trustee. The district court erred by extending the safe harbor in section 546E beyond the bounds that Congress intended. Section 546C is an exception to the trustee's avoidance powers when two conditions are met. First, when the transfer the trustee seeks to avoid is one of the securities transfers listed in the statute. And second, when at least one of the entities party to that transfer is a protected participant in the securities market. The district court incorrectly found that both conditions were met in this case. Or a settlement payment on the first step, right? That would be, yes, a protected transfer. The district court found that both we had a protected transfer, either a settlement payment or a transfer in connection with securities contract, as well as at least one financial institution that was involved. I'd like to focus today's argument though on why there was not a protected transfer, either a settlement payment or a transfer in connection with securities contract, and as such why there's clearly no preemption of the state law claims that are actually at issue here. The primary fraudulent transfer is an approximately 700 million dollar dividend payment from Boston Generating, or BostGen for short. That dividend payment was not a settlement payment and that dividend payment was not a transfer in connection. Why is it a dividend payment? I mean, isn't it, it's to the EBG Bank of America account. If you look at the overall transfers, I think Merrick requires us to. Then it's to the Boney account and then on to the shareholders in the 35 million dollar dividend payment or the 925 million for the unit redemptions. Doesn't the law require us to look at that overall structure? No, Your Honor. Not for the purposes of identifying the transfer the trustee seeks to avoid, and so when Merrick used the word overarching transfer, it did not mean to look at the overarching transaction. That case concerned a transfer to transferee transfer. An overarching transfer was then, was there meant to say we disregard the conduits in the transfers, but here EBG, which was the sole member of BostGen, was not a conduit. When it received the distribution from BostGen, that one-way payment, it had dominion and control over those funds. It had, that was to fund the tender offer, right? It had to be used to fund a tender offer. That was the reason BostGen was and that's the express purpose, right? It wasn't just giving them 700 million dollars to do what they wish with. It had to be used for a tender offer, right? We dispute necessarily that the loan agreements required that to be used. I mean, once EBG had that money from BostGen's creditors perspective, BostGen could have, you know, not used that money on the tender offer, chose to, you know, breach the tender offer. So your position is the credit agreements didn't require them to transport that money for purposes of the... There was a separate credit agreement with BostGen for its creditors. That credit agreement quote-unquote said one of the permitted uses was, and there was only, you know, a limited number of permitted uses. One of those permitted uses was to transfer that money to EBG. This is the first lien agreement and the second lien agreement? The first lien agreement is with respect to BostGen generating and its creditors, which could, those are the only to avoid the transfer from BostGen to EBG. That transfer can't oppose and didn't impose any obligations technically on EBG because EBG, the recipient, was not a party to that loan agreement. Sure it was. I mean, doesn't it define EBG to include its subsidiaries and BostGen's a subsidiary of EBG? It's right there in the definitional text of the tender offer. Yeah, I believe you're referring to the tender offer and the tender offer does say EBG and all the subsidiaries, but I think the same problem is it's an application of formal, like, literalism as opposed to looking at common sense and what the statute is here. That does tend to be how contract interpretation is done. Except here, if we apply that, that would also mean that BostGen, if you put, if you insert BostGen into there, that BostGen was offering to buy its units from EBG or that BostGen was offering to buy its subsidiary units from the EBG's members. The contract doesn't make sense. The only entity with any obligations under that tender offer was EBG and the fact that it said EBG means us and every one of our subsidiaries can't be actually read into any of the actual provisions of that contract to have meaning on who has obligations and rights thereon. Even if they weren't a party, you're still in connection with the securities agreement, right? No, Your Honor, because the... Why not? Explain that to me. I'm having a hard time understanding how this, what I would call an end-to-end transaction, under merit, is not in connection with a securities contract. So if you accepted the end-to-end transfer, which is the only transfer the trustee could have sought to avoid under 544 or 548 as opposed to recover, since the bankruptcy code separates the concepts of avoidance from recovery, so it specifically says subsequent transfers are initial transfers. The initial transfer from Boston, that dividend payment, was not a transfer in connection of a securities contract because the only natural way to read the language that Congress said was the debtor securities contract. As we put forth in our briefing, this is the, really the only way in which somebody can actually make sense of the Congress's use of the indefinite Article A. Congress did not use the indefinite Article A to mean any one securities contract. It meant, when you put it in the context of the statute as a whole, it meant the debtor securities contract. And just because, you know, I think as the Supreme Court noted in the Florida Department of Revenue... So even though BG, Boston transmitted the $708 million in connection with an offer to purchase for the tender offer, which is undoubtedly a securities contract, you're saying that we shouldn't look at that that way, even though that was the specific purpose of the $708 million transfer. That's what our holding would be? The, you need to look... Even when you're transmitting the money in connection with an offer to purchase for the tender offer, it's not in connection with a securities contract. That would be the holding of this court. The holding of the court would be first that Congress said, when it said in connection with the securities contract, had to be a transfer in connection with the securities contract to which the debtor was a party. And if you find that... It doesn't say that. And also that would be contrary to the whole purposes. The whole purpose is to minimize the displacement that caused to the securities market if there's a bankruptcy for investors. And if we were to narrowly look at each individual component that you're trying to do, as opposed to what the end was, wouldn't there be a lot of disruption to the markets? Well, I think, Your Honor, you could say that... Undoing enormous transactions in the securities markets, right? Undoing a tender offer here. The... We are... Technically speaking, you would only... If you are looking at through the prism of the bankruptcy code, you're only undoing, avoiding the initial transfer, and you can seek recovery from the subsequent transfers. And that would cause no disruption to the markets, right? If we interpreted the law that way, and that could be done in every tender offer, that wouldn't cause any disruption in your view? I think you could also argue that any... What the recipient of a fraudulent transfer does with that money after receiving it, Congress said, we're going to leave that aside. And so here, what you're trying to do is say, well, in this case, we know that the recipient... Because we... The motives of the transfer and the transfer shouldn't be relevant to the safe harbor inquiry. And whether or not the recipient takes the money from a fraudulent transfer and goes and buys Apple stocks afterwards, doesn't change the analysis under the bankruptcy code of whether or not the initial transfer to that recipient was subject to avoidance. Does the Moore case tell us we have to look at the context of the transfer in here? I mean, this is just a repetition of the same question, but the reality is this was a transfer for the purpose of the tender offer. And I think binding precedent requires us to look at that context. Do I have that right? The binding precedent in this court says you can look at the overall transaction. That case was specific to determine whether or not there was reasonable equivalent value. But here, I think, even if you do look at the overall transaction, it's still an overall transaction with separate loan agreements pursuant to separate corporate obligations. So even though it says you have to look at the overall transaction, you can still do that here. But the first question you have to answer is, is the initial transfer, the transfer the trustee could have sought to avoid and the only transfer the trustee could have sought to avoid, does that fall within the safe harbor? Congress made the decision to separate avoidance and recovery and separate initial transfers from subsequent transfers. And if Congress was concerned about how the recipient of a fraudulent transfer spent money, it would have specifically said, and 550 also applies. So you can always have a securities market after the debtor. What if you address the argument that even if you look at this particular transfer, that this would qualify because Bosch Gen was a financial institution because U.S. Bank acted as their agent in connection with the tender offer because they entrusted U.S. Bank to receive and then distribute the funds. What, how, even if you look at this transfer, how are they not operating as a financial institution under that scenario? The, I think the record's not clear exactly on what the bank for Bosch Gen was doing, but I don't believe that it was acting as agent for the tender offer. To act as agent for the tender offer, it has to have, the principal has to manifest some consent. What the bank for Bosch Gen was doing here was just executing a wire transfer that says, I understand I'm making this wire transfer, I understand I'm making that wire transfer to a separate bank for EBG, which isn't even the bank that's in charge of the tender offer. But that does not mean that that bank could have bound as agent principal Bosch Gen to any provision of the tender offer because Bosch Gen was not a party to the tender offer itself. All right, see that in my time, thank you. And just, I'm sorry, just on that last point, that's the same argument that you would say we can't read the definitional language that EBG is defined in the tender offer as including its subsidiaries literally, correct? That's correct. In certain parts of that tender offer, you could say, okay, it makes sense. I'm talking about the financial condition of EBG to talk about EBG as a whole, including its subsidiaries. But when you're actually talking about rights and obligations and who is actually the party to the contract, yes, Your Honor, Bosch Gen was not a party to that contract. All right, we will now hear from Mr. Anker. Good morning, Your Honors. I think it's still the morning. I know we went a little long today. I'm going to try to focus on 546E and specifically on whether we have a qualifying transfer. I do want to underscore just for a moment, we have alternative arguments for affirmance, both with statute of repose and ratification, which really, I think, plays into, frankly, the 546E analysis. These were a transaction from the beginning made by lenders, Judge Nathan, you're exactly right, for the purpose. Their credit agreement has a use of proceeds provision and it has a beginning, a recital. The entire purpose of the loan was to facilitate this transfer. Your adversary contends that there were material omissions and that lenders weren't fully informed. Am I right in understanding that your position is we don't need to reach those arguments? They're fully alternative to the 546E. I don't think it's dispositive on ratification, but I do want to get to 546E. On ratification, Judge Carney, the question is ratification of what? This is a fraudulent transfer claim dealing with the debtor's transfer of its property, not the lender's making the loan. Ratification, if you're deceived in making a loan, you bring a fraudulent inducement claim against the lenders and indeed they, I'm sorry, against management who induced that and indeed they did. There was a fraudulent inducement claim here and it was settled against the insiders. My only point is when you look at this as an integrated transaction and I agree that is the legal standard, part of what makes it an integrated transaction is from the get-go, if I can use that colloquial expression, from the get-go, this was a loan to end up in the hands of the shareholders. That's what it all was about from the beginning. Let me turn the 546E and in particular the qualifying transaction. Disjunctive test ignites to be either a settlement payment or transfer in connection with a securities contract. I agree with you, Judge Bianco, at least I think where you're headed. I think the latter is the easier, but let me spend one minute on settlement payment. Judge Nathan, that's right. You read a statute by looking at what Congress wrote. Congress says what it means, means what it says. Congress wrote a statute that defines settlement payment to include an interim settlement payment, a preliminary settlement payment, and anything in the process that brings you to the final transfer. The payment, even if you view the world through the prism they want you to view it, that you don't look at the overarching transfer, and I agree with you that's exactly what Merit says. Let's take it on their terms. Was the transfer, if there was such a transfer, from Boston generating to EBG a preliminary settlement payment? Of course it was. It was made for the purpose of ultimately getting the money there. The Crescent National Forge and Crescent Resources case, both district courts, not from the circuit, they're not complaining on you, but they both deal with precisely the situation, subsidiary making dividend, paying a dividend to the parent to ultimately get to the shareholders, both say it's a settlement payment. But let's say you disagree. Is it a transfer in connection with a securities contract? It's certainly a transfer according to the plaintiff's appellants. Is it in connection with a securities contract? The tender offer is of course a securities contract. It's a contract that's set forth on its face to purchase and sell securities. Is it in connection with? Well, this court has law on what in connection with means in the 546E context, this court's decision in the Madoff case. Unanimous panel saying in connection with means it has some relation to or association with, and it sets a low bar. Here you have a transfer. I mean, when my adversary says it, just you don't look at what ultimately the money is used for. If I give someone money and don't put any conditions on how they're going to use it, and then they happen to use it to buy securities, I get that argument in that context. Those aren't the facts here on this motion to dismiss. The loan agreement, the tender offer agreement, the board resolutions, the flow of funds memorandum also indicate that the only purpose, the only purpose of transferring this money from Boston Generating to EBG was to allow EBG to fund the tender offer. It was for that very purpose. That surely meets the low bar relationship test. Frankly, my adversary concedes as much, because what he says is, well, to be sure that's right, but you really should define securities contract to be not a contract to purchase securities, but a contract to purchase securities to which the debtor, and in this world he posits that the debtor is Boston Generating as a party. First answer, those aren't the words Congress wrote. As their brief points out, there are provisions of the Bankruptcy Code that define terms so that they are only contracts to which the debtor is a party, and here Congress didn't write that. And Congress, I don't need to say this to you, you know this, Congress is presumed when it uses disparate language, inclusion or exclusion, of provisions to act intentionally and deliberately, and there's no contrary indication here. But even if he were right, then he would lose factually. Why would he lose factually? Because of course Boston Generating was a party to the tender offer, the offer to purchase. Judge Nathan, you're right, the definition is we. And yes, the shareholders were shareholders of the parent, but Boston Generating was a party to that tender offer agreement because it was getting the money and passing it on. The question is not who did the shareholders, what was the ultimate holding company? The question is, was Boston Generating a party to the underlying agreement? And it is on its face. So the argument that made, the entire argument on the other side, which is you have to have a securities contract to which BG is a party, Boston Generating, the law, the statute doesn't say that, and even if it did factually on this record, you have it as a party. Those are dispositive. Judge Nathan, you're right, the law of this circuit, and Merritt frankly is pointing in the same direction, is that fraudulent transfer law, to quote Judge Douglas in Pepper v. Litton, you look to the bankruptcy law, to substance not form. That's sort of the first principle of bankruptcy. You don't carve out parts of transactions and pretend that they are in isolation. What this court said in Orr v. Kinderhill is where a transfer is part of an overall plan, we don't put blinders on and we look at the overall plan. You look at the overall transfer here and it's all to get the money ultimately to the shareholders. Judge Bianco, you're right as well, I'm not always into this as a saying, I agree with judges, but I will today. It's probably a good practice. You're right in saying the whole purpose of the security settlement payment safe harbor is to protect the securities industry. Think about what happens here. We undo a tender offer that occurred in 2006, if I remember correctly, shareholders all over the place and we basically undo it simply because the lenders wanted to lend to a subsidiary which had assets against which they could do so. Finally, I don't think you need to, I think you can view it as an overarching transfer and we win on that ground, or you can look at the EBG, Boston generating the EBG, transmittal of money as a separate transfer and for the reasons I said, we win on that ground as well. But I heard Mr. Ruggeroff say, if you want to look at the question of whether it was an overall transfer, that EBG was not a conduit. I think those were his direct words. In the record, there is the prior complaint, complaint filed before this court decided tribune and the Supreme Court decided merit and the plaintiffs realized they had a problem and needed to completely revise their theory. And in that, if you look at the cause of action, count one, which is a fraudulent transfer claim about the money going to the ultimate shareholders, they assert and this is paragraph 149 and it's in the record and I quote, this count is also asserted on behalf of all creditors of Boston Gen within the same distinction of creditor. What legal bearing does a non-operative complaint have? I think it carries judicial estoppel, but even if it does not, Judge Nathan, it seems to me that you can look at the ultimate question, what happened here? And my point is, and I will quote it. I mean, it's not, obviously the Third Amendment complaint changes the characterization and that's the operative complaint. Okay, I'll move off it. I'll simply say there's specifically here an allegation and I will say it to you that EBG was quote, a conduit, a mere conduit for the transfer. That was this own plaintiff's characteristic. But let's take the case your way, but not your way. Let's take the case the way the plaintiff is now asserting in the Third Amendment complaint. EBG was not a conduit. It was a separate entity. You get back to the questions I posed earlier. If you accept, even if you accept the notion that we're not going to look at the overall transfer, we're going to pretend that there was some individual transfer from Boston Generating to EBG. You then have to ask the question, was that a settlement payment? Yes, it was because it was a preliminary payment along the way. All the cases come out that way. Or was it a transfer in connection with a securities contract? It plainly was, unless you buy into the notion that Congress actually left words out of the statute. It intended to apply and you buy the notion that even though the offer to purchase, the tender offer, is written as a contract with both Boston Generating and EBG. Really, it's not. Let me ask you a question. You cited the NRA 9 West District Court case a number of times in your brief, and as you know, that case is on appeal. I'm actually on that panel. Obviously, every transaction is somewhat different, but aren't there some overlapping questions about how to analyze these types of transactions that would be common to both cases? I think, Judge Branko, I want to say in confession, I am one of the lawyers on the Apple leaf side, although I did not argue it. I didn't want to argue it, but thank you for reminding me. I want to be candid with the Court. I think 9 West, if you were to affirm completely, including on Judge Rakoff's contract by contract approach, it would be dispositive here. But even if you were to reverse, it's fundamentally a different case. As I understand the issue in 9 West, that one of the issues in that case, and the issue I think you are positing, is although the public shareholders had their shares paid off through a bank that was hired to be a depository, there were also insiders, CEO, CFO, who simply got paid for their shares through a debit on their credit, I guess, on payroll. They had no bank involved. No bank involved. Here, the bank is involved. You have U.S. Bank involved at the outset from BG transferring to Bank of America. You have Bank of America transferring to Bank of New York, and Bank of New York is the depository. So even if one were to say, in a case where the bank is not involved at all, we don't take a contract by contract approach, this case is fundamentally different. And so you could, on that issue, reverse in 9 West and affirm here. All right. Thank you. Thank you, Your Honor. Okay, Mr. Bruckrock, you have three minutes. Before I turn back to 546C, I did want to quickly address the ratification defense. A fraudulent transfer is fraudulent when the debtor is insolvent because it's the insolvency that demonstrates the intent to hinder and delay into fraud. If the creditor is unaware of the insolvency, the fact that the creditor might be aware of the transfer, but unaware of the actual financial state of the company, there can't be ratification because ratification requires full knowledge of all material facts, and it requires the person, you know, alleged to do the ratification to consent to an act that otherwise would have been unauthorized. If we were to agree with you on 546C, wouldn't it go back to the district court to take a first crack at ratification and the other argument? Your Honor, you could potentially cite that here as well, but otherwise, yes, it would remain back to the district court to actually fully decide the issue and ratification, which I don't actually think can be decided and should not be decided on the pleadings here, since it does at the very least raise factual questions. But even that question wasn't considered by the district court? The argument was raised to the district court, but it was not considered. I understand. Yeah, it was not considered. That's correct. So turning then to the settlement payment defense that I heard my opposing counsel make today, a settlement, as courts have recognized, requires an exchange of value. And Boston did not exchange any value when it paid the dividend to EBG. And as courts in this circuit have specifically recognized, including the 9 West case, when a dividend is paid to shareholders that retain their equity following the dividend, such payments are not settlement payments. A dividend does not become a settlement payment, whether partial, interim, or otherwise, under the statute, simply because the recipient takes that money. I'm sorry, and you're talking about the $35 million dividend payment? No, I'm sorry. I'm back on the $700 million dividend, which is the main transfer. So I'm saying EBG, before and after that transfer, was the only shareholder of Boston Generated. And under all the cases in the circuit, under the, I think they're all from the Southern District of New York, so long as there's no change in ownership, a transfer that is a dividend is not a settlement payment. It doesn't become a settlement payment because the recipient then uses that money to engage in its own security transactions. What makes it a dividend payment? What makes it a dividend payment is that this is technically, since that Boston is technically an LLC, it's technically a distribution, but it's the same difference for purposes of corporate law. The company declared a distribution to its sole member out of surplus or out of profits, as it's allowed to do so, assuming that it wasn't insolvent, which it was. That money went up. Two, it was not a transfer just not pursuant to any sort of otherwise corporate obligations. The company made a distribution. It didn't just say, here's cash from your tender offer. It made a dividend payment to its sole member, and that sole member took that money, had that money in a separate bank account, and had dominion control over it. We don't look at at all what any of the transaction documents talk about in describing what's going to happen with that money. We just ignore it. I'm not asking the court to ignore any of the transaction documents. What I'm saying is that the loan agreement with the Boston creditors that was defrauded here couldn't have imposed technically an obligation under EBG to do anything with that money, and if EBG would have used the money to buy lottery stocks or, you know, uranium, it would have had, you know, Boston's creditors wouldn't have had any recourse. If EBG decided to cancel the tender offer, which it could have also done, like, the money could have been returned to Boston Generating. So from the Boston Generating's creditors' perspective, that agreement just said, we understand you're making a dividend payment to EBG, and, you know, there's separate loan agreements, there's a separate tender offer governing EBG's decision to make a securities transaction, or not make a securities transaction, with its own members. All right. Thank you, both sides, for your decision. Have a good day. Thank you. So that concludes the business to the court. Thanks to Ms. Beard. I'll ask that she adjourn the court.